IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN C., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 C 2149 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Justin C.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of the Social Security Administration ("Commissioner"), denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and this matter is fully briefed and ripe for review. *See* [ECF Nos. 19, 20, 26].

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 19], which this Court construes as a motion, is granted. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On May 17, 2017, Claimant filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning on July 25, 2009, which Claimant later amended to August 2, 2015. (R.14, 221-228). Those applications were denied initially on February 15, 2017 (R.14, 137-141), and again on reconsideration on June 30, 2017 (R.14, 142), after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.14, 151-155). On July 24, 2018, Claimant appeared and testified at a hearing before ALJ Janet Akers. (R.14, 31-69). At the hearing, Claimant was represented by attorney Jessica Triebe. (R.14). During the hearing, the ALJ also heard testimony from vocational expert Bonnie Martindale. (R.14).

On January 25, 2019, the ALJ issued her decision denying Claimant's applications for disability insurance benefits and supplement security income. (R.14-25). In finding Claimant was not disabled within the meaning of the Social Security Act, the ALJ followed the five-step evaluation process required by the Social Security Regulations for individuals over the age of 18. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found Claimant met the insured status requirement of the Social

Security Act through March 31, 2017, and that Claimant had not engaged in substantial gainful activity since August 2, 2015, the amended alleged onset date of his disability. (R.16). At step two, the ALJ found that Claimant has severe impairments, including degenerative disc disease of the lumbar spine. (R.16).

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R.17). The ALJ then determined that Claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except "he can alternate from sitting to standing every 30 minutes for 1 to 2 minutes while remaining at the work station with no change in work process; can occasionally climb ladders, ropes, and scaffolds; can occasionally stoop and crawl; can frequently reach overhead with the left upper extremity; can have no exposure to moving mechanical parts and unprotected heights and cannot perform production rate or pace work." (R.19).

At step four, the ALJ determined that Claimant could not perform his past relevant work. (R.23). At step five, the ALJ considered Claimant's age, education, work experience, and RFC and concluded there are a significant number of jobs in the national economy that Claimant could perform (R.23). For all these reasons, the ALJ found Claimant was not disabled under the Social Security Act. (R.24). The Appeals Council declined to review the matter on February 6, 2020 (R.2-7), making the ALJ's decision the final decision of the Commissioner. Therefore, this Court now

has jurisdiction to review this matter. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Jarnutowski v. Kijakazi,* -- F.4th -- , 2022 WL 4126293, at *6 (7th Cir. Sept. 12, 2022); *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's

4

decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant raises two arguments challenging the ALJ's decision: (1) the ALJ incorrectly assessed Claimant's physical RFC; and (2) the ALJ's incorrectly assessed Claimant's testimony about the intensity, persistence, and limiting effects of his symptoms. *See* Claimant's Brief [ECF No. 19]. The standard of review for these arguments is clear and not controversial. The ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). An ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but she must build a logical bridge from the evidence to her conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). It is well-settled law that mere boilerplate statements and conclusions cannot support an ALJ's decision and an ALJ must set forth "specific reasons" for discounting subjective reports of symptoms. *See Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009), citing *Moss v.*

5

*Astrue,* 555 F.3d 556, 561 (7th Cir. 2009); *Steele v. Barnhart,* 290 F.3d 936, 941-42 (7th Cir. 2002). An ALJ's sparse explanation frustrates a court's ability to engage in a meaningful review of the ALJ's decision. *Eakin v. Astrue,* 432 Fed. Appx. 607, 611 (7th Cir. 2011).

Among other limitations, the ALJ found Claimant had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b) except he can alternate from sitting to standing every 30 minutes for one to two minutes while remaining at the workstation with no change in work process." (R.19). Claimant interprets that limitation to mean that Claimant could sit for 30 minutes at a time with a need to shift to standing for 1 to 2 minutes and then return to sitting. Claimant's Brief [ECF No. 19], at 7. The Commissioner, on the other hand, argues that the ALJ found Claimant could alternate from sitting to standing every 30 minutes and that it would take 1-2 minutes for the claimant to change positions, while remaining at his workstation. Commissioner's Brief [ECF No. 20], at 6.

In the Court's view, the ALJ's sit/stand limitation is not clear and requires remand. Based on the record evidence, it is not reasonably clear how to interpret the ALJ's sit/stand limitation. Does Claimant have to sit all day and every 30 minutes stand up for 1 to 2 minutes and then return to sitting? Can Claimant stand all day and every 30 minutes sit down for 1 to 2 minutes and then return to standing? Can Claimant alternate between sitting and standing every 30 minutes with 1 to 2 minutes to change positions?

6

In addition, the Court also notes that Claimant testified that he could sit for only 10 to 15 minutes before he needed to lie down or move. (R.40). During the hearing, Claimant asked if he could stand up and shift his position because he was uncomfortable sitting for so long. (R.41). Claimant further testified that he needed to alternate between standing, sitting, and lying down at least once in an hour and needed to lie down for 30 minutes every hour. (R.42-43). He also testified that he spent most of his time at home lying down and reading. (R.41). In addition, some medical records show that Claimant had fatigue that severely impaired his ability to work and required him to take additional breaks to rest throughout the day (R.484), and that he needed to lie down throughout the day to relieve his symptoms. (R.484, 595). In addition, Claimant's treating physician Dr. Dalawari opined that Claimant needed to change positions at will every 10 to 30 minutes (R.596), and his treating back surgeon Dr. Sampat opined that Claimant needed to switch positions every 10 minutes. (R.485). The ALJ did not point to any evidence, testimony, or medical opinion that established either (1) Claimant would have to change positions only after 30 minutes, or (2) Claimant would need 1 to 2 minutes to change positions.

The ALJ did not address Claimant's testimony that he needed to lie down during the day. Nor did the ALJ explain why she did not credit that testimony. Claimant's treating physicians Dr. Dalawari and Dr. Sampat, both opined it was medically reasonable for Claimant to lie down throughout the day. (R.484, 595). No other opinion of record addressed Claimant's need to lie down. The Court recognizes that the ALJ gave "little weight" to Dr. Dalawari's and Dr. Sampat's opinions, but in

7

light of Claimant's corroborating testimony and subjective complaints about needing to lie down, the Court finds it was not reasonable for the ALJ not to address Claimant's testimony and the opinions that it was medically reasonable for Claimant to need to lie down.

In the Court's view, at a minimum, the ALJ erred by not providing a more fulsome narrative discussion of how the record evidence supported her determination, and her failure to address Claimant's testimony that he needed to lie down requires remand. The Court is left with two critical and dispositive questions: (1) how does the clinical and opinion evidence support the ALJ's RFC assessment; and (2) did the ALJ consider Claimant's subjective complaint that he need to lie down, and if so, why did she reject it? Nowhere in her opinion does the ALJ answer these questions.

The ALJ may not have been persuaded by Claimant's testimony that he needed to lie down frequently, but she did not provide adequate explanation of her rationale for rejecting that Claimant's testimony and reaching the conclusions she reached. It is well-settled that an ALJ cannot cherry pick which evidence to evaluate and disregard other critical evidence. *See Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014); *Myles,* 582 F.3d at 678. The Court cannot, and will not, make assumptions about how the ALJ evaluated and weighed the evidence and Claimant's testimony when there is evidence in the record that is inconsistent with the ALJ's evaluation. *See Briscoe*, 425 F.3d at 352 (finding that an ALJ must explain how the evidence supports their specific functional restrictions); *Scott v. Astrue*, 647 F.3d 734, 740-41 (7th Cir. 2011) (holding that an ALJ must consider claimant reports on the limiting

8

pain of their medically determinable impairments). Therefore, the case must be remanded for further explanation from the ALJ.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In this case, the ALJ did not address Claimant's complaint that he needed to lie down frequently during the day, and remand is required for that reason. This is not an instance in which the Court is reweighing the evidence. Here, the ALJ simply cherry-picked some evidence and did not address conflicting evidence in the record or explain how she weighed and presumably rejected that evidence in the first place. That does not mean the Court agrees with Claimant that he is disabled and cannot work within the meaning of the applicable law. Rather, it means that the ALJ did not explain her decisional process sufficiently for the Court to be able to conclude that her ultimate decision is supported by substantial evidence under the controlling standard of review.

The Court's decision in this regard also is not a comment on the merits of Claimant's other arguments, and he is free to assert them on remand. Further, the Court expresses no opinion about the decision to be made on remand but encourages the ALJ to provide a more fulsome explanation of her analysis, the evidence she took into account, and the weight she gave to it, and to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions,

9

whatever those conclusions may be. *See Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

## CONCLUSION

For all the reasons discussed above, Claimant's Memorandum in Support of Summary Remand [ECF No. 19] is granted. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 27, 2022